UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| SHARIA KENNEDY, | ) |
|           Plaintiff, | ) |
| vs. | ) No. |
| | ) Jury Demand |
| CEVA LOGISTICS U.S., INC. and WOOD PERSONNEL SERVICES, INC., | ) |
|           Defendants. | ) |

## COMPLAINT

Plaintiff files this Complaint against Defendants for sexual discrimination and race discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, et seq. (Title VII), and alleges the following.

## Jurisdiction and Parties

1. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

2. Defendant CEVA Logistics U.S., Inc. ("CEVA") is a Delaware corporation that does business in Tennessee. Its registered agent for service of process in Tennessee is Corporation Service Company, 2908 Poston Avenue, Nashville, Tennessee, 37203.

3. Defendant CEVA provides freight management and transportation services to customers throughout the United States. Defendant has facilities located in Lebanon, Tennessee.

4. Defendant CEVA had more than 15 employees during the years 2021 and 2022.

5. Defendant Wood Personnel Services, Inc. ("Wood Personnel") is a Tennessee corporation with its principal address at 2 International Plaza, Suite 800, Nashville, Tennessee,

37217. Its registered agent for service of process in Tennessee is William R. Wood, 2 International Plaza, Suite 800, Nashville, Tennessee, 37217.

6. Defendant Wood Personnel provides staffing services to businesses in Tennessee. Defendant has an office located in Gallatin, Tennessee.

7. Defendant Wood Personnel had more than 15 employees during the years 2021 and 2022.

8. Plaintiff is a 37-year-old Black female.

## Facts

9. Plaintiff was employed at CEVA's facility in Lebanon, Tennessee from approximately June 27, 2022 until December 1, 2022.

10. Plaintiff was an hourly employee who performed typing and other administrative work.

11. Plaintiff obtained her job at CEVA by applying for employment through Wood Personnel in Gallatin, which provided Plaintiff with orientation training; which provided Plaintiff with CEVA's employment policies; and which handled the payroll transactions whereby Plaintiff was paid the wages she earned in her job at CEVA. Defendant Wood Personnel had an employee located at the CEVA facility who communicated with Plaintiff about her job and provided her with certain information about the job. Defendant Wood Personnel was Plaintiff's employee of record.

12. Defendant CEVA had control over essential terms and conditions of Plaintiff's employment, such as the duties involved in the job and Plaintiff's pay rate; the manner in which Plaintiff performed her job; and whether Plaintiff was promoted, disciplined, or terminated. Defendant CEVA supervised Plaintiff's work through employees of CEVA.

13. While she was employed at CEVA, Plaintiff was supervised by a shift leader

named Christopher Reyes, who was an employee of CEVA. Plaintiff was also supervised by a management employee of CEVA named Cyril Brown, who was Mr. Reyes' direct supervisor.

14. While Plaintiff was employed at CEVA, Christopher Reyes subjected Plaintiff to constant sexual and racial harassment.

15. More specifically, Mr. Reyes constantly made unwanted sexual advances toward Plaintiff and engaged in racial harassment of Plaintiff by telling her that she was sexy, asking for her phone number, and asking her "can I take you out?;" by asking Plaintiff how much it would cost to have sex with her; by asking Plaintiff whether he could get together with Plaintiff's daughter, who also worked at CEVA, and asking Plaintiff whether he could pay money to get together with Plaintiff's daughter; by blowing kisses to Plaintiff; by making comments such as "hey baby," and "come here baby;" by asking Plaintiff whether she could "see what I've got in my pants;" by making lewd comments about other female employees in Plaintiff's presence; by talking about having sex with other women; by showing pornographic material to Plaintiff and others, including a video of Reyes having sex with his girlfriend; by asking Plaintiff whether she performed oral sex on another Black man, and referring to the Black man by the "N" word; by generally using the "N" word and engaging in other racist slurs and comments in Plaintiff's presence; and by engaging in other similar sexual and racial harassment.

16. Mr. Reyes also engaged in repeated physical touching of Plaintiff by putting his hands on Plaintiff's legs, arms, and/or hip. On one occasion, Reyes touched Plaintiff's breast.

17. Mr. Reyes' statements and conduct described above were unwelcome, unwanted, and offensive sexual advances and racial harassment that routinely occurred on a daily basis over a period of approximately five months

18. Mr. Reyes' sexual and racial harassment interfered with Plaintiff's ability to perform her job. Plaintiff was routinely fearful that Reyes would come up behind her and grope

or touch her, and she was always on edge about what sexual or racial comments he might make to her.

19. Mr. Reyes' direct supervisor, Cyril Brown, was present and personally observed many of the incidents of Reyes' sexual and racial harassment as described above, but Brown took no corrective action.

20. Indeed, Mr. Reyes bragged to Plaintiff that CEVA would never do anything about his sexual and racial harassment because, according to Reyes, he had been engaging in such conduct without repercussions throughout 15 years of employment with CEVA.

21. Similarly, other employees at CEVA informed Plaintiff that Mr. Reyes had been engaging in such sexual and racial harassment before Plaintiff started working there.

22. Plaintiff initially reported Mr. Reyes' sexual and racial harassment to Wood Personnel on or about September 1, 2022, and Wood Personnel informed CEVA about Plaintiff's complaints. Plaintiff had additional discussions with Wood Personnel human resources employees in early September.

23. On or about September 8, 2022, Plaintiff met with a human resources representative from CEVA, who advised Plaintiff that CEVA had corroborated Plaintiff's reports about Mr. Reyes' conduct as to other women generally, but not as to Plaintiff specifically.

24. During September and October of 2022, Plaintiff had numerous meetings and discussions about Mr. Reyes' sexual and racial harassment with human resources employees at both CEVA and Wood Personnel. Plaintiff provided Defendants with evidence of Mr. Reyes' conduct and with the names of other employees who were witnesses to the conduct.

25. Despite Plaintiff's reports of Mr. Reyes' sexual and racial harassment and Reyes' known history of sexual and racial harassment at CEVA, Defendants failed to take meaningful corrective action during the entire months of September, October, and November of 2022.

Accordingly, Mr. Reyes remained as Plaintiff's shift leader and continued to subject Plaintiff to sexual and racial harassment during this period, and Cyril Brown continued to supervise both Reyes and Plaintiff.

26. Instead of taking corrective action, Defendants retaliated against Plaintiff by sending her and her daughter home from work for no reason on or about September 28, 2022; by cleaning out Plaintiff's desk as if she had been fired on or about September 29, 2022; by penalizing Plaintiff with disciplinary points that were unjustified; by failing to pay Plaintiff for all hours worked; and by garnishing Plaintiff's wages based on a garnishment that was legally flawed.

27. On November 1, 2022, human resources employees of CEVA and Wood Personnel met with Plaintiff and advised her that Christopher Reyes had been fired that day. Defendant did not take corrective action as to Cyril Brown, who remained as Plaintiff's supervisor despite his complicity in the sexual and racial harassment that occurred.

28. Beginning on December 1, 2022, Plaintiff did not return to work again because the conditions of her employment had become intolerable. As a result, Plaintiff's employment was terminated.

29. The sexual and racial harassment described above caused Plaintiff significant emotional distress, mental anguish, embarrassment, humiliation, and loss of enjoyment of life.

30. As a result of Plaintiff's loss of employment with Defendants, she has sustained lost wages and benefits.

**Violations of Title VII—Sexual Harassment**

31. Pursuant to Fed. R. Civ. P. 10(c), Plaintiff adopts by reference the allegations set forth in paragraphs 1-30 above.

32. Defendant CEVA was an employer of Plaintiff for purposes of Title VII coverage.

33. Defendant Wood Personnel was an employer of Plaintiff for purposes of Title VII coverage.

34. Defendants CEVA and Wood Personnel were joint employers for purposes of Title VII coverage.

35. The conduct described above was sexual harassment, based on Plaintiff's sex as a female, that was severe and pervasive and constituted a hostile work environment that violated 42 U.S.C. § 2000e-2(a)(1).

36. Defendants empowered Christopher Reyes, as a shift leader, to take tangible employment actions against Plaintiff that would effect a change in Plaintiff's employment status, such as determining her work hours and compensation, disciplining Plaintiff, and terminating her employment. Accordingly, Defendants are vicariously liable for Reyes' sexual harassment.

37. Aside from any vicarious liability for Mr. Reyes' sexual harassment, Defendants are separately liable based on their negligence in failing to prevent Reyes' sexual harassment from occurring, despite knowledge of Reyes' history of sexual harassment; and based on their failure to take prompt corrective action to address the sexual harassment that Plaintiff reported to them.

38. Plaintiff did not return to work because Defendants' sexual harassment caused the conditions of Plaintiff's employment to become intolerable, and any reasonable person would have found those conditions to be intolerable. Accordingly, Defendants constructively terminated Plaintiff's employment.

39. As a result of Defendants' violations of Title VII, Plaintiff sustained and is entitled to recover substantial economic damages, including back pay, front pay, and loss of benefits.

40. As a result of Defendants' violations of Title VII, Plaintiff sustained and is

entitled to recover compensatory damages, including damages for emotional distress, mental anguish, embarrassment, humiliation, and loss of enjoyment of life.

41. Defendants' violations of Title VII were malicious and intentional, or in reckless disregard for Plaintiff's legal rights, entitling Plaintiff to punitive damages.

42. Plaintiff is entitled to an award of statutory attorneys' fees and costs pursuant to Title VII.

### Violations of Title VII—Racial Harassment

43. Pursuant to Fed. R. Civ. P. 10(c), Plaintiff adopts by reference the allegations set forth in paragraphs 1-42 above.

44. The conduct described above was racial harassment, based on Plaintiff's race as a Black female, that was severe and pervasive and constituted a hostile work environment that violated 42 U.S.C. § 2000e-2(a)(1).

45. Defendants are vicariously liable for Christopher Reyes' racial harassment.

46. Aside from any vicarious liability for Mr. Reyes' racial harassment, Defendants are separately liable based on their negligence in failing to prevent Reyes' racial harassment from occurring, despite knowledge of Reyes' history of racial harassment; and based on their failure to take prompt corrective action to address the racial harassment that Plaintiff reported to them.

47. Plaintiff did not return to work because Defendants' racial harassment caused the conditions of Plaintiff's employment to become intolerable, and any reasonable person would have found those conditions to be intolerable. Accordingly, Defendants constructively terminated Plaintiff's employment.

48. As a result of Defendants' violations of Title VII, Plaintiff sustained and is entitled to recover substantial economic damages, including back pay, front pay, and loss of

benefits.

49. As a result of Defendants' violations of Title VII, Plaintiff sustained and is entitled to recover compensatory damages, including damages for emotional distress, mental anguish, embarrassment, humiliation, and loss of enjoyment of life.

50. Defendants' violations of Title VII were malicious and intentional, or in reckless disregard for Plaintiff's legal rights, entitling Plaintiff to punitive damages.

51. Plaintiff is entitled to an award of statutory attorneys' fees and costs pursuant to Title VII.

### Violations of Title VII—Retaliation

52. Pursuant to Fed. R. Civ. P. 10(c), Plaintiff adopts by reference the allegations set forth in paragraphs 1-51 above.

53. Defendants retaliated against Plaintiff for opposing an unlawful employment practice in violation of Title VII, and specifically 42 U.S.C. § 2000e-3(a).

54. More specifically, Defendants' retaliation, as described above, was in response to Plaintiff's continuing reports of the sexual and racial harassment described herein.

55. Plaintiff did not return to work because Defendants' retaliation caused the conditions of Plaintiff's employment to become intolerable, and any reasonable person would have found those conditions to be intolerable. Accordingly, Defendants constructively terminated Plaintiff's employment by retaliating against her.

56. As a result of Defendants' retaliation in violation of Title VII, Plaintiff sustained and is entitled to recover substantial economic damages, including back pay, front pay, and loss of benefits.

57. As a result of Defendants' retaliation in violation of Title VII, Plaintiff sustained and is entitled to recover compensatory damages, including damages for emotional distress,

mental anguish, embarrassment, humiliation, and loss of enjoyment of life.

58. Defendants' retaliation in violation of Title VII was malicious and intentional, or in reckless disregard for Plaintiff's legal rights, entitling Plaintiff to punitive damages.

## **Exhaustion of Administrative Remedies**

59. On March 24, 2023, Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) against CEVA for sexual harassment/discrimination and racial harassment/discrimination under Title VII.

60. On March 24, 2023, Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) against Wood Personnel for sexual harassment/discrimination and racial harassment/discrimination under Title VII.

61. On September 29, 2023, the EEOC issued a dismissal and notice of right to sue for Plaintiff's charge of discrimination against CEVA.

62. On September 29, 2023, the EEOC issued a dismissal and notice of right to sue on for Plaintiff's charge of discrimination against Wood Personnel.

## **Prayer for Relief**

WHEREFORE, Plaintiff prays for a judgment against Defendants that includes the following:

(a) lost wages and benefits, including back pay and front pay;

(b) compensatory damages, including damages for emotional distress, mental anguish, embarrassment and humiliation, and loss of enjoyment of life;

(c) punitive damages;

(d) interest;

(e) attorneys' fees and costs; and

(f) all further legal and equitable relief to which she may be entitled.

Plaintiff further demands a jury to try the issues when joined.

>Respectfully submitted,
>
>/s/ R. Scott Jackson, Jr.
>R. Scott Jackson, Jr. (TN 13839)
>4525 Harding Road, Suite 200
>Nashville, TN 37205
>(615) 313-8188
>(615) 313-8702 (facsimile)
>rsjackson@rsjacksonlaw.com
>
>Aubrey T. Givens (TN 21491)
>Aubrey Givens & Associates, PLLC
>231 W. Old Hickory Blvd.
>Suite B, Second Floor
>Madison, TN 37115
>(615) 248-8600
>(615) 248-8111 (facsimile)
>contactus@givenslawfirm.com
>
>Attorneys for Plaintiff